[No. 5785.]

ALLEN, ADMINISTRATOR, v. SWADLEY ET AL.

1.  **Water Rights — Prescriptive Title** — Open, exclusive, adverse and peaceable possession and enjoyment of a share of the waters of an irrigating ditch for over thirty years, gives title.—(554)

2.  **Findings on Conflicting Testimony**—In a case heard without a jury, a finding of facts supported by the testimony will not be reviewed, though there be a substantial conflict in the evidence.—(554)

3.  **Appeals—Technical Errors** will not be considered where it is clear that, upon the merits, the defeated party has no right, and that the ultimate conclusion must be the same, even although the judgment under consideration be reversed.—(554)

*Appeal from Jefferson District Court*—Hon. A. H. DeFRANCE, Judge.

Mr. GEO. W. TAYLOR, for appellant.

Messrs. BENEDICT & PHELPS, and Mr. J. W. BARNES, for appellees.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This suit was begun in July, 1904, by William M. Allen, in the district court of the city and county

of Denver, as administrator of the estate of Thomas
T. Reno, deceased, and on July 11th next thereafter
transferred to the district court of Jefferson county
for trial.　It is to recover an undivided one-sixth in-
terest in the Swadley ditch, and an equal undivided
share of its decreed water.　The complaint avers the
due appointment of plaintiff as administrator of the
estate, and ownership, use and possession by Reno,
as tenant in common with the defendants and their
predecessors in interest, at the time of his death, and
prior thereto, of the interest in the Swadley ditch
and water right sought to be recovered, with a state-
ment that this title was acquired by purchase from
one John Reno, who became the owner of an un-
divided one-third of said ditch and water right in
March, 1859.　The complaint further shows that
Thomas T. Reno continuously during his lifetime
owned the east $\frac{1}{2}$ of the southwest $\frac{1}{4}$ of section 9,
and the west $\frac{1}{2}$ of the southwest $\frac{1}{4}$ of section 10,
township 3 south, range 69 west, in Jefferson coun-
ty, Colorado, upon which land his interest in the
waters of the ditch had been from year to year con-
tinuously and uninterruptedly applied, for the pur-
pose of irrigation, up to the time of his death.

Paragraph 9 of the plaintiff's complaint is as
follows:

"And the said defendant further alleges that the
said Thomas T. Reno and his said estate has ever
since the time of the said purchase been in the con-
tinual and uninterrupted use, possession, occupancy
and control thereof, and had and still has a prior
right to the use of the said one-sixth undivided part
or portion of the said ditch, the right of way, the
easement thereof, and the said proportionate amount
of the water flowing therein and appropriated there-
by by a right superior to any or all of the said de-
fendants above named."

The complaint shows demand on defendants in April, 1904, by plaintiff for said interest in the ditch and water right, in behalf of the estate, and a refusal of the defendants to comply with that demand, and avers further a conspiracy, under claim of ownership, between the defendants to confiscate and convert the said interest to their own use.

Paragraph 14 is as follows:

"And the said parties including all the joint tenants named, as well as the other defendants, with the exception of L. A. Reno and William Allen, have with intent to cheat and defraud the said Thomas T. Reno, senior, and his said estate, and the heirs and creditors thereof and this said plaintiff, taken possession of all of the said property of the estate above mentioned, and entirely dispossessed the said estate of the same, as well as the heirs and creditors thereof, and this said plaintiff, and peremptorily refused to permit this said plaintiff or the said estate, or the heirs and creditors thereof to use or in any manner enjoy the said property above described, or any part or portion thereof, and without any right or legal authority have converted and appropriated the same to their own use."

The plaintiff further alleges that the reasonable worth of the property which he seeks to recover is $2,500.00, and that a reasonable annual rental value thereof is $500.00. The prayer is for a decree and judgment of ownership, and for possession of the property, and damages in the sum of $4,000.00.

For answer to the complaint the defendants take issue on practically all of its averments, including that of the alleged appointment of Allen as administrator of the Reno estate, and particularly as to the ownership, or right of possession, at any time, or at all, by the Reno estate, of an undivided one-sixth

interest of the ditch in question, in its easement, right-of-way, or in its water right.

And for a further answer to the complaint, and as a part of the first defense, the defendants plead full settlement, by the administrator Eldro Upton, of the Thomas T. Reno estate, long prior to the alleged appointment of William M. Allen as administrator thereof; the sale of all of the real estate belonging to that estate, and also the fact that no one, neither the administrator, the heirs at law, or any other person or persons, ever claimed any interest in the Swadley ditch, or the waters thereof, on behalf of the Thomas T. Reno estate, or ever used or enjoyed the same for that estate, after the death of Thomas T. Reno in 1873. In 1904 William M. Allen, for the first time, gave expression to some claim on behalf of the estate of an interest in the ditch; that during all of this period, the administrator, and the heirs at law of Thomas T. Reno, deceased, had full knowledge of the adverse, undisputed, open and notorious possession, claim of ownership, occupancy, enjoyment and use by the defendants, and their predecessors, of that particular interest and right in said ditch, and the specific right to the use of water through it, now claimed by William M. Allen, as administrator.

The defendants, for a second defense, plead title to said interest in the ditch and water right by prescription, alleging, in substance, that for more than thirty years prior to the commencement of this action and prior to the appointment of William M. Allen as the alleged administrator of Thomas T. Reno, deceased, and since early in the year 1872, the grantors of these defendants, and others claiming the same rights and interests, and the defendants themselves, have been in the open, notorious, exclusive and uninterrupted possession, use and enjoyment of the

specific property and property rights and interest now claimed herein by the plaintiff, as alleged administrator of the estate of the deceased Thomas T. Reno; and that such occupancy, enjoyment, possession and use has been adverse to the said Thomas T. Reno, and to all of the world, and has been without let, hindrance, claim or demand from any person or persons whomsoever; and that by reason thereof the said plaintiff, and all persons claiming by, through or under the said Thomas T. Reno, deceased, are barred by lapse of time and prescription from asserting any supposed right, claim or interest in, and from maintaining this action to dispossess or deprive the defendants of, the property and the property rights in question.

For a third defense the defendants plead and say in substance: that Thomas T. Reno died intestate in the month of July, A. D. 1873, and that at the time of his death he was not in possession, use or enjoyment of any of the property or property rights claimed by the plaintiff as administrator; that for a long time prior to the death of said deceased, and for more than a period of one year previous thereto, he had not been in possession, use and enjoyment of said property and property rights; that for some time preceding the death of Thomas T. Reno, and at the time thereof, other persons and parties under whom these defendants claim, and these defendants, were in the open, notorious and exclusive possession thereof, claiming adversely to said Reno, and to all the world; that the persons so holding and claiming adversely, and these defendants and others claiming through and under said persons so holding and claiming at the time of the death of said Thomas T. Reno, deceased, and prior thereto, have continued in the like open, notorious, exclusive, uninterrupted and adverse possession, use and enjoyment of said property

and property rights, down to the present time; that is to say, for a period of more than thirty-two years prior to the commencement of this suit these defendants have expended large sums of money in the improvement of said property, all within the knowledge of Thomas T. Reno in his lifetime, and all of his heirs at law, and other parties interested in said estate, since his death, without any adverse claim whatsoever being asserted by the said Reno, or his heirs, or any other person or persons in interest. The defense of estoppel is thus set forth with great particularity and minuteness of detail.

The fourth defense pleads the bar of the statute of limitations, in which it is averred in substance, that if any action ever accrued to plaintiff, as administrator of the estate of Thomas T. Reno, or to any person representing that estate, or to any one of the heirs thereof, such right or cause of action accrued more than thirty years prior to the beginning of this suit, and is therefore barred at the time of the commencement of this suit and now.

On the new matter of the answer, and on each separate defense thereof, the plaintiff took issue in reply. Trial was had to the court and findings upon which a judgment of dismissal was predicated were entered, general in their nature, and to the effect that at the time of the commencement of this action the estate of Thomas T. Reno had no interest in the Swadley ditch or water right.

The material facts disclosed at the trial are in brief about as follows: Thomas T. Reno, in 1864, took a bill of sale from one John Reno, his son, for an undivided one-half of the latter's interest in the Swadley ditch and water right, which one-half interest is described, in the bill of sale, as being an undivided one-eighth of the whole ditch. In July, 1873, Thomas T. Reno died intestate. In 1875 one Eldro

Upton was appointed administrator of the estate, which, according to the inventory then filed, covered and included both real and personal property, but no ditch or water right. Under orders of the county court of Jefferson county, which had appointed him administrator, Upton disposed of the personal property of the estate, and borrowed money on all of its real estate, which was later sold under mortgage foreclosure, and fully administered, to all intents and purposes, that estate. However, Upton filed no final report and procured no order of discharge, and moved away, and for more than twenty years immediately preceding November, 1903, had not been heard of. About the date last above referred to William M. Allen found, among the files of the estate papers of Thomas T. Reno, an account in favor of W. A. H. Loveland, who had been dead many years, on which there was due a claimed balance of $18.23; it had remained among the papers, without being acted upon, for about thirty years, and the bill was over thirty-four years of age when Allen discovered it. At the same time, among the same papers, there was also uncovered another trifling account for $10.10, in favor of the firm of Messrs. Michael & Co., equally ancient and venerable with the Loveland claim. On the strength of these stale accounts William M. Allen got himself appointed administrator of the estate of Thomas T. Reno in the place of Eldro Upton, by the probate court of Jefferson county, and on his own motion procured the allowance of these claims, although the statute of limitations had run against them for more than a quarter of a century. No one representing the claimants requested their allowance, but it was at the behest of the administrator Allen that the claim of $18.23, increased by interest to $61.73, and that for $10.10, increased by interest to $21.05, were favorably considered by the court and

made charges against the estate of Thomas T. Reno, deceased.

The Swadley ditch has been in existence since prior to 1860, and until the present trouble arose its course seems to have been smooth and the parties interested in it seem to have gotten along without apparent friction. Some time in the later sixties this ditch was divided up, that is, marked off into sections, according to the number of interests in it, and instead of a fund being provided for the care and maintenance of the ditch as a whole, it was kept in repair by the different owners looking after their respective sections. There were eight sections, but only five owners, one owner having an undivided one-half interest, George C. Swadley, or four-eighths, and four other owners one-eighth apiece, who were William M. Allen, holding in his individual right, Louis Reno, the Longans, and the Farmer brothers. Later other parties became interested in portions of the Swadley interest; the defendant Cole succeeded to the Longan interest, and the Secrests and others to the Farmer interest.

For over thirty-six years Allen took care of his portion of the ditch and got one-eighth of the water; during the same period the Longans and those claiming under them cared for their section and got one-eighth of the water; the Farmers and their successors for a like interest; Louis Reno, for the same period, held, used, enjoyed and cared for his section and got one-eighth of the water; and George C. Swadley cared for the remainder of the ditch and received the balance, or four-eighths of the water. During this entire period each user of water from the ditch, and their respective predecessors and grantors, claimed ownership in, had possession thereof and use of water therefrom, in the proportions above indicated. Upon this basis each had proceeded with the

acquisition and improvement of farming lands under the ditch, making use of their respective water rights to that end. In the claims thus asserted and in the use of water accordingly, Allen had been acting with the others, maintaining his one-eighth interest in the ditch as the others had maintained their respective portions, when, after a lapse of thirty-odd years, with the situation respecting the ownership of the ditch and the use of water therefrom, as above related, unchanged, in 1904 Allen suddenly demanded for himself a one-sixth interest in this ditch, and acting as administrator of the estate of Thomas T. Reno, deceased, another one-sixth interest. No claim whatever from the time of the death of Thomas T. Reno in July, 1873, up to April, 1904, had ever been made by anybody that this estate had any interest in the ditch, nor had there been any use made thereof on its account. In order to swell his individual right of one-eighth interest, which he had enjoyed and used for over thirty-six years, to a one-sixth, and also to secure for the Reno estate, as administrator, a one-sixth interest in the ditch, Allen, in the month last above mentioned, arbitrarily changed the manner of the division of the water which had obtained for years, and sought to apportion it according to his own notion of what the relative interests in the ditch and water were. When he undertook to thus change the division, some of the defendants protested and restored matters to the original situation, so as to continue the division as it had stood for a generation, whereupon Allen, as administrator, commenced this suit, and also one in his own right, to recover in each one, a one-sixth interest in the Swadley ditch and water right.

There is abundant competent testimony to show that Thomas T. Reno in his lifetime, some time in the early seventies, disposed of his interest in this ditch

to the Farmer brothers. The court must, by its general finding, have reached that conclusion, and although upon this point there is substantial conflict in the testimony, still that conclusion finds ample support in the proofs. The testimony further shows that for some time prior to his death, Thomas T. Reno took no water from this ditch and did nothing toward its maintenance. It also further appears that from the time of his death, in 1873, to 1904, when Allen, in his capacity as administrator, made demand upon the defendants for a one-sixth interest in this ditch and water, as belonging to the estate of Thomas T. Reno, there had been no claim from any source, or by any one, that the Reno estate had any interest therein whatsoever. The original administrator, Upton, claimed no interest and made no inventory of any. Louis Reno, a son of Thomas T. Reno and a joint owner in the ditch, made no such claim. Neither did Mrs. William M. Allen, the wife of this plaintiff, and daughter of Thomas T. Reno, make such claim. These children, and heirs at law, were in that immediate vicinity during this whole period, living in Jefferson county, and had personal knowledge of the operation of the ditch, of the claims of ownership therein, and for over thirty years failed to assert any claim of interest in or right to said ditch or its waters in behalf of their father's estate. It is also to be particularly noted that the specific land which belonged to the Thomas T. Reno estate, and upon which originally was used for its irrigation the water which he got from this ditch, was mortgaged by the administrator Upton, and sometime in 1875 passed entirely from said estate by foreclosure sale under that mortgage, leaving the estate without real estate holdings.

There is no question of law involved, necessary to be determined, as we view the matter, and the con-

troversy may well be settled upon purely questions of fact. The case, to say the least, is most extraordinary, indeed we believe it to be without a parallel in the history of the jurisprudence of this state. The court below heard all of the testimony, saw practically all of the witnesses, and was therefore perfectly equipped and qualified to pass upon the facts. That was its special and peculiar province. Its findings in this respect, based as they were on conflicting testimony, are conclusive upon this court. They are manifestly warranted, and we have no disposition whatever to disturb them, even had we the power and authority so to do. We have carefully read the voluminous record and are unable to conceive how, from any viewpoint, the conclusion of the trial court could have been different. Considering the great lapse of time, during which no claim whatsoever was made in behalf of the Thomas T. Reno estate to an interest in this ditch, it is fair to say that the testimony fails utterly to establish, with that certainty and directness, which under the peculiar facts of this case ought to be required and demanded, that the estate, as such, ever had any right, title or interest whatsoever in the Swadley ditch, or its water right.

There may have been, strictly speaking, technical error on the part of the court in the admission and exclusion of testimony. We do not consider in detail these objections. It is so clear, upon the merits of the whole controversy, that the estate cannot recover, that discussion of mere technical objections can avail nothing. In a case like this, certainly, no mere technicalities should be permitted to intervene to aid, encourage and prolong litigation, in support of a right of such doubtful import as the one here involved, since, in any event, the ultimate conclusion upon the merits must be always the same. Indeed we are aware of no principle of law, that can

possibly be invoked and applied, which can, under the facts of the case that are undisputed, warrant a different result than the one embodied by the trial court in its final judgment and decree, which we approve in every particular.                *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.