[No. 3705.]

## Sebold v. Rieger et al.

1. Appeal and Error—*Presumptions.* What appears in the record as to matters of fact is to be viewed in the light most favorable to the successful party. (210)

2. Easements—*By Prescription.* Land owner "gave" the right of way over his lands for a lateral ditch, to enable a neighbor to conduct water to the lands of the latter for the irrigation thereof, and assisted in the excavation of the lateral. The lateral was maintained and enjoyed for twenty-five years, or thereabout's, without question or objection. *Held,* the title thereto was as complete as if acquired by purchase or condemnation. (210, 211)

3. —— *Servient Tenement—Right of Owner.* The owner of lands over which another has acquired an easement to maintain a lateral ditch, for the irrigation of his lands, is not, merely by his property in the servient tenement, entitled to divert water from such lateral, to the prejudice of the owner of the dominant tenement. Secs. 3170, 3171 of the Revised Statutes have not the effect to confer such right. (210, 211)

Whether by proceeding under the statute the right to enlarge the lateral may be acquired, not decided. (211)

4. Evidence—*Burden of Proof.* Where a land owner asserts the right to divert water from the lateral ditch of another, across his lands, he has the burden of proving that such diversion will not be injurious to the proprietor of the lateral ditch. (211)

5. New Trial—*Newly Discovered Evidence.* Motions for a new trial on the ground of newly discovered evidence are viewed with suspicion. The denial of such a motion will not be reviewed except for a gross abuse of discretion. (213)

The affidavits must show the efforts made by the applicant to locate the additional witnesses proposed to be examined, and must exclude all inference of delay or neglect on the part of the applicant. (212)

Evidence as to matters not contraverted on the trial will not suffice. (212)

*Appeal from Weld District Court.* Hon. James E. Garrigues, Judge.

Mr. John C. Nixon, Mr. Thomas A. Nixon for appellant.

Mr. John T. Jacobs for appellees.

Cunningham, P. J.

Rieger, who was the plaintiff below, and Sebold, who was the defendant, owned adjoining farms in Weld County, which drew their water for irrigation purposes from the same source, or main ditch. Rieger's land was watered by a lateral ditch which crossed Sebold's land, and could be watered in no other way. Defendant insisted upon the right to take water for a portion of his land from the lateral which had been constructed across it by Rieger for the use of the latter's land. This led to serious difficulty, and various lawsuits, some criminal in their nature. Finally plaintiff brought this action to quiet his title in the lateral ditch, his wife being joined with him, for what purpose we are not advised. Sebold answered, and in a cross-complaint asked that he be adjudged to be a joint owner of the lateral ditch in question. From a judgment in favor of Rieger, excluding Sebold from all right to the use of the lateral ditch, the latter brings the case here for review.

1. The facts, viewed in the light most favorable to Rieger, as it is our duty to regard them, show that the lateral ditch was constructed across the Sebold land in the early eighties, something like twenty-five years before Sebold acquired title to it, and during all that time said lateral was used by Rieger and his predecessors in title, for irrigation of the latter's land. Previous owners of the Sebold land had used water from the lateral ditch, but for the purpose of irrigating only an acre or so of high ground near the Sebold house; at least two of the previous owners of the Sebold land, who had owned it for eight and three years, respectively, testified that they always understood that Rieger owned the ditch, and that they only used water from it with his consent. Indeed, one of these owners testified that he had helped a former owner of the Rieger land construct the ditch, in 1882, in order to somewhat change its course, and that *he gave the right of way to the then owner of the Rieger land*. This witness had owned the Sebold land for eight years after the lateral ditch was thus constructed. Apparently, im-

mediately upon acquiring the land, Sebold insisted upon using the ditch whenever he pleased, without the consent of Rieger, and upon something like twenty-five acres of land. There is no evidence to show that the capacity of the lateral ditch is sufficient to accommodate any considerable amount of the Sebold land, without interfering with the rights or requirements of Rieger. Rieger's right in the ditch, under the testimony as just related, was as complete as if his grantors had purchased the right of way, or acquired it by condemnation. The question of the right of Sebold, under the statutes, to enlarge the ditch and thus avoid the construction of a parallel lateral (if one be necessary) is not involved in this case, and by nothing that we have said or shall say is it intended to question any right he may have to pursue the statutory course for acquiring a right to use the lateral ditch. If the ditch, as now constructed, is of sufficient capacity to serve the needs of Rieger, and also the demands of Sebold, the duty was upon Sebold to establish that fact by evidence, under proper pleadings; this he made no attempt to do. The learned trial judge found that it was practicable to irrigate all of the Sebold land without resort to this lateral, which had been originally constructed by a remote grantor of Rieger, and which for more than twenty-five years had been continuously used by the owners of the Rieger farm. Indeed, the evidence discloses that there was, at the time of the trial, a parallel lateral owned and controlled entirely by Sebold; and there is evidence tending to prove that this lateral could, with a trifling expenditure of time, be made to cover all the Sebold land that could be supplied from the Rieger lateral. Counsel for appellant rely upon sections 3170 and 3171 R. S., which manifestly are not applicable to the case made; and they insist, "that an owner of the servient estate [Sebold, in this case] may always use an easement in any manner not inconsistent with the dominant use thereof." If this be conceded, still the owner of the servient estate who seeks to invoke this rule must prove that the use which he proposes to make of the

easement is not inconsistent with, or injurious to, the dominant use thereof.

2. Complaint is made of the action of the trial court in denying the motion of defendant for a new trial, which motion was based largely upon newly discovered evidence. We think appellant's showing as to diligence in the attempt to discover, before the first trial, the evidence he proposed · to use on a second trial was insufficient under the following authorities: *Barton v. Laws,* 4 Colo. App. 212, 35 Pac. 284; *Lee-Kinsey Imp. Co. v. Jenks,* 13 Colo. App. 265, 57 Pac. 191.

Moreover, much of the testimony which appellant profused to introduce was not important, since it went to matters not controverted on the trial, or to matters that might as well have been proven by other witnesses. All the witnesses that defendant seeks to use on a second trial lived in Jefferson County or in Denver, and apparently were permanently located. One of the most important witnesses, if we may judge by his affidavit, was the son of a witness who testified on the trial in this case; hence, his whereabouts, presumably, could have been easily ascertained by appellant had he inquired of the father, who was present at the trial. By defendant's own affidavit, which he filed in support of his motion for new trial, he knew of the importance of the testimony of all the witnesses that he desired to use, and knew their names. He does not set forth in his affidavit what efforts he made, prior to trial, to locate them, nor did he make any effort to have the trial postponed for that or any other purpose. All but one of the witnesses which appellant claims to have discovered were previous record owners of the land, and he states, in his affidavit for new trial, that he took their names from the abstract of title to his land, *before the trial,* thus indicating plainly that he appreciated the importance of their testimony which, so far as material, went to the question of the previous use and repair of the lateral ditch by prior owners of his land. Furthermore, within a very few days after appellant had lost his case, he was able to locate all of

the witnesses which he desires to use on a second trial.—29 *Cyc.* 892. The trial was had on February 18th. On March 8th and 9th he had discovered all these witnesses.

"Motions for new trials, based upon newly discovered evidence, are regarded with suspicion and disfavor, and are left to the sound discretion of the trial judge whose action in denying such motions will not be reversed except for gross abuse of discretion."—29 *Cyc.* 881; Baylies New Tr. & Apps., pp. 527-529; Spellings New Tr. & App. Proc., vol. 1, §§ 206-209-221; 14 Enc. Pl. & Pr., 790-799; Haynes New Tr. & Apps., p. 250, § 87; *Arnold v. Skeggs,* 35 Calif. 684; *Baker v. Joseph,* 16 Calif. 180.

In *Baker v. Joseph, supra,* it is said:

"The temptations. are so strong to make a favorable showing after a defeat in an angry and bitter controversy involving considerable interests, and the circumstances that the testimony has just been discovered, when it is too late to introduce it, so suspicious, that courts require the very strongest showing of diligence and all other facts necessary to give effect to the claim."

*Judgment Affirmed.*