FIRST NATIONAL BANK IN GRAND JUNCTION, Trustee, Plaintiff-Appellee and Cross-Appellant,

v.

Karl FITZPATRICK and Clara F. Reay, Defendants-Appellants and Cross-Appellees,

and

The Heirs of Thomas H. PRICE, Deceased, Ellis Karl Price, Glen Thomas Price, Vesta Fitzpatrick, Gena M. Harrison, Treasurer of Mesa County, Colorado, and all unknown persons who claim any interest in the subject matter of this action, Defendants,

v.

The HOME LOAN AND INVESTMENT COMPANY as Trustee for Howard McMullin and Josie Daniels, Third-Party Defendant.

No. 79CA0974.

Colorado Court of Appeals, Div. I.

Feb. 13, 1981.

Dufford, Waldeck & Williams, Laird T. Milburn, Grand Junction, for plaintiff-appellee and cross-appellant.

Reams & Kaye, Warren F. Reams and Bruce J. Kaye, Grand Junction, for defendants-appellants and cross-appellees.

STERNBERG, Judge.

The First National Bank in Grand Junction, as trustee, filed this quiet title action, claiming ownership of certain land under chain of title and by adverse possession. Fitzpatrick and Reay asserted ownership by virtue of a treasurer's deed issued pursuant to a valid tax sale. Although it concluded that the property was not in the bank's chain of title, the trial court quieted title in the bank on the basis of its claim of adverse possession. On appeal, Fitzpatrick and Reay contend that the trial court erred in determining that adverse possession was continuous for 18 years, as required by § 38–41–101(1), C.R.S.1973, and that issuance of the treasurer's deed during the pendency of litigation eliminated the bank's

claim to title by adverse possession. The bank cross-appeals, asserting that the trial court erred in determining that the property was not in its chain of title. We affirm.

## I. *Seasonal Use-Adverse Possession*

■ At trial, the beneficial owner of the land held in trust by the bank testified that her husband bought the property in 1950 and constructed a fence "a couple of years after purchase." She said that as soon as the fence was built the land was used for grazing, that mules were kept on the property until 1956 and cattle were run there beginning in 1966, and that "[w]e always kept saddle horses down there." She then testified as follows:

"A.  Well, all I can say, we have run horses, mules and cattle on it since 1952–'51–'52. There has been livestock on it all the time.

Q.  Since you have owned it?

A.  Not continuously year round, but in the spring or fall.

.  .  .  .

Q.  What, if any, years, . . . was the property not used in the fashion you have described?

A.  I don't recall any year it wasn't used."

Fitzpatrick and Reay first assert that adverse possession of the disputed property was not established because there was no continuous possession from 1956 to 1966. We disagree. From the testimony above, the court reasonably could have concluded that the disputed property was used seasonally to graze livestock during the controverted period from 1956 to 1966. Under *Smith v. Town of Fowler*, 138 Colo. 359, 333 P.2d 1034 (1959), pasturage of livestock alone is not sufficient to show adverse possession, but where, as here, in addition to pasturing livestock, a fence is erected, the statutory period begins to run, *Thomson v. Clarks, Inc.*, 162 Colo. 506, 427 P.2d 314 (1967), and the adverse possession claim will not be defeated because use for this purpose is seasonal. *Niles v. Churchill*, 29 Colo.App. 283, 482 P.2d 994 (1971).

## II. *The Treasurer's Deed*

■ We conclude that the treasurer's deed issued during the pendency of the quiet title action did not extinguish the bank's claim of ownership by virtue of adverse possession. On February 11, 1976, having learned that Fitzpatrick and Reay had purchased the property at a tax sale and, that after paying taxes due, they had made application for a treasurer's deed, the bank attempted to redeem the property by tendering payment of back taxes. Such tender was rejected. On March 7, 1977, the bank filed its action to quiet title and recorded a lis pendens against the property. Four days later it obtained a temporary restraining order, prohibiting issuance of the treasurer's deed.

However, Fitzpatrick and Reay moved to dissolve the temporary retraining order. After a hearing, the trial court, accepting the argument of Fitzpatrick and Reay, determined that there would be no irreparable harm to the bank if the treasurer's deed were to issue and granted their motion. At the same time, the trial court issued a preliminary injunction enjoining Fitzpatrick and Reay's possession, use, or consumption of the property pending outcome of the litigation. The treasurer's deed to Fitzpatrick and Reay was issued pursuant to these restrictions.

Subsequently, the competing claims of ownership were tried to the court which then issued its decree quieting title in the bank on the basis of its claim of adverse possession, thus avoiding the effect of the treasurer's deed.

Fitzpatrick and Reay claim that, in doing so, the trial court erred or, at least, abused its discretion because issuance of the treasurer's deed eliminated the bank's claim by adverse possession. Again, we disagree.

The real property tax sales statute, § 39–11–136(1), C.R.S.1973, provides that a treasurer's deed "shall vest in the purchaser all the right, title, interest, and estate of the former owner in and to the land conveyed . . ." This has been construed to mean that title by adverse possession vanishes upon issuance of a deed for unpaid

taxes pursuant to a valid tax sale. *Linville v. Russell*, 168 Colo. 459, 452 P.2d 18 (1969); *Harrison v. Everett*, 135 Colo. 55, 308 P.2d 216 (1957). However, where, as here, claims to ownership of real property based upon adverse possession are asserted in a judicial proceeding to quiet title *prior* to issuance of the treasurer's deed and payment of taxes has been tendered, the policy considerations compelling application of this absolute rule do not apply. *See Moorehead v. John Deere Industrial Equipment Co.*, 194 Colo. 398, 572 P.2d 1207 (1978).

The trial court dissolved the temporary restraining order at Fitzpatrick and Reay's instigation. The court's action was predicated on a finding that no irreparable harm would accrue to the bank if the treasurer's deed were to issue. There is no indication that, in making this determination, the trial court intended finally to resolve the adverse possession issue which subsequently was fully litigated at trial. Moreover, if we were to accept Fitzpatrick and Reay's argument that the treasurer's deed cut off the bank's claim of title by adverse possession, then we would be compelled to conclude the trial court erred in determining that the bank would not suffer irreparable harm if the deed were to issue. Thus, we find no merit in the contention that the trial court erred or abused its discretion.

Consequently, we affirm the trial court's decree quieting title in the bank on the basis of its claim of adverse possession and, therefore, need not address the contentions raised in the cross-appeal.

Judgment affirmed.

COYTE and BERMAN, JJ., concur.